THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:10CR505 |
| | ) | |
| Plaintiff, | ) | JUDGE LIOI |
| | ) | |
| v. | ) | |
| | ) | |
| THOMAS J. STRICKER, | ) | UNITED STATES OF AMERICA'S |
| GREGORY T. STRICKER, and | ) | SENTENCING MEMORANDUM |
| STRICKER REFINISHING CO., INC. | ) | |
| | ) | |
| Defendants. | ) | |

Now comes the United States of America, by and through its counsel Steven M. Dettelbach, United States Attorney for the Northern District of Ohio, and Brad J. Beeson, Special Assistant United States Attorney, and submits this memorandum setting forth the United States' position regarding the calculation of the applicable Sentencing Guidelines level and the sentencing factors set forth in 18 U.S.C. § 3553(a), relative to the imposition of sentence for defendants, Thomas J. Stricker and Gregory T. Stricker.

In summary, the United States respectfully submits: (1) the Presentence Investigation Report properly calculates defendants' advisory Sentencing Guidelines range as 12-18 months of incarceration; (2) the Court should not depart or vary from that

range; and (3) that the Court should impose a sentence within the advisory guidelines range.

I.   BACKGROUND

The facts surrounding this case, as well as, the offense conduct, is set forth in detail in the Presentence Investigation Report. In addition to these facts, the United States would only add a brief discussion of the environmental impact of the defendants' conduct.

In early May 2007, a sampler was covertly installed in the sewer system downstream of the Stricker Refinishing facility. The sampler was in place for 14 days. Analytical results from the collected samples indicated that zinc levels were above those in typical sewage on six separate instances. Nickel and copper levels were above typical sewage on many instances and found to be exceeding the applicable limits on six instances. The copper monitored had the highest levels, with copper results exceeding the applicable limit by 100% on three occasions.

The sampler was covertly reinstalled on July 3, 2007, and samples were collected through July 13, 2007. During this period, the wastewater collected by the sampler exceeded the applicable limits for copper on 55 instances, for nickel on 14 instances, and for zinc on five instances. The sample results exceeded the copper limit by 100 times, the zinc limit by four times, and the nickel limit by 30 times.

The sampler was covertly reinstalled, for the last time, on July 30, 2007. The purpose of this sampling was to determine the presence or absence of cyanide in the wastewaters in the sewer. Samples were taken through August 1, 2007. The analytical results from the samples showed that the levels of total cyanide were greater than that found in typical domestic sewage but not greater than the applicable limit for cyanide.

Scott Broski is the Manager of Water Quality & Industrial Surveillance for the Northeast Ohio Regional Sewer District ("NEORSD"). NEORSD is the sewer system that services the City of Cleveland, including the Stricker Refinishing facility. Mr. Broski has been in this position for the last three years. Prior to that he was the Supervisor of Enforcement for seven years and an Investigator for five years. Mr. Broski has undergone extensive training in his field. Also, Mr. Broski is a member of the National Association of Clean Water Agencies where he sits on the Pretreatment and Pollution Prevention Committee.

In his duties at NEORSD Mr. Broski works closely with the industrial users that discharge into the public sewer system. His department oversees the Industrial Pretreatment Program, which has been delegated the authority to enforce provisions of the Clean Water Act by the Ohio EPA. In this capacity, Mr. Broski is very familiar with the type of pollutants discharged by industrial users of the NEORSD sewer system and the effect their discharges have on the operations of the NEORSD's plants. Sewage treatment plants are designed to handle residential wastewater. These plants use techniques such as settling and chemical conditioning to promote the formation of solids, filtration and bacterial treatment, which treats the wastewater rendering it acceptable to be returned to the environment. The treated wastewater is then typically discharged to a river or lake and the solids removed during the treatment process are concentrated into sewage sludge. The sludge is disposed of by techniques such as landfilling, land application (spreading on farmland), or incineration.

Mr. Broski states that the NEORSD operates three sewage treatment plants. Like other sewage treatment plants, none of the NEORSD plants are closed-loop systems. The wastewater that enters the plant, after being treated, is discharged into a public waterway.

The plant that treats the wastewater from the Stricker Refinishing facility discharges directly into Lake Erie. Any solids that are removed from the incoming wastewater are collected as sludge. The sludge generated by the NEORSD plants is either landfilled or incinerated and the remaining ashes are placed in a landfill.

Mr. Broski further states that the NEORSD plants do not specifically treat the wastewater for metals. Any metals that enter the NEORSD plants leave the plants in either the water discharged to the Cuyahoga River and Lake Erie or in the sludge which is either landfilled or incinerated and landfilled. Therefore, the metals discharged from Stricker Refinishing facility, which contained copper, nickel, silver, and zinc, eventually went into Lake Erie, the air, or the ground.

II.     APPLICABLE LEGAL STANDARDS

Any sentencing determination must begin with the calculation of a defendant's total offense level under the Sentencing Guidelines. Although the Supreme Court has declared the Guidelines to be advisory, it has also stated that "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." See Gall v. United States, 128 S. Ct. 586, 596 (2007). The Sixth Circuit adheres to this view, holding that sentencing determinations should begin with a calculation of the appropriate Guidelines range. The Guidelines then serve as an element to be considered along with the other sentencing factors set forth in 18 U.S.C. § 3553(a). See United States v. Collington, 461 F.3d 805, 807 (6th Cir. 2006).

The Sentencing Guidelines, therefore, remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses. While, to be sure, "[i]n accord with 18 U.S.C., §3553(a), the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate

sentence," <u>Kimbrough v. United States</u>, 128 S. Ct. 558, 574 (2007), it remains the case that "the Commission fills an important role: It has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise,'" <u>Id</u>. at 574 (quoting <u>United States v. Pruitt</u>, 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)).

In addition to the Sentencing Guidelines, this Court must also consider all of the sentencing considerations set forth in 18 U.S.C. § 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. <u>See</u> 18 U.S.C. § 3553(a).

III.  SENTENCING GUIDELINES

In this case, Thomas J. Stricker and Gregory T. Stricker did not enter into plea agreements with the United States. During the plea hearing the Defendants stipulated to the factual basis for their guilty pleas, acknowledged their constitutional rights that were waived by entering guilty pleas, acknowledged the elements of the offense charged, and entered guilty pleas to the one count Information. Concerning the computation of the

offense level under the Sentencing Guidelines, the parties stated that there was no agreement.

The United States concurs with the final adjusted offense level as set forth in the Presentence Investigation Report, a level 13 after acceptance. However, the United States reached the level 13 through a different process than is detailed in the Presentence Investigation Report.

    A.    Summary of Calculation

The following is a summary of the Sentencing Guidelines as they apply to the individuals in this case:

| **Guidelines Reference** | **Points** | **Total** |
|---|---|---|
| §2Q1.2(a) - base offense level | 8 | 8 |
| §2Q1.2(b)(1)(A) - repetitive discharge | 6 | 14 |
| Application Note 5 - guided departure related to discharge into the environment | +2/-2 | 16/12 |
| §2Q1.2(b)(4) - in violation of the permit | 4 | 20/16 |
| Application Note 8 - guided departure related to discharge without a permit | +2/-2 | 22/14 |
| §3B1.1 - role in offense (supervisor) | +2 | 24/16 |
| §3E1.1 - acceptance of responsibility | -3 | **21/13** |

The position of the United States is that the maximum downward departures under Application Notes 5 and 8 apply. Therefore, the final adjusted guideline level is 13.

    B.    Details of Calculation

The Sentencing Guidelines found at §2Q1.2 apply to the mishandling of hazardous or toxic substances. As discussed above, the discharges contained copper, nickel, silver, zinc, and cyanide. All of these pollutants are defined by the United States Environmental

Protection Agency ("U.S. EPA") to be toxic substances. See 40 CFR § 401.15. Because the illegal discharges in this case contain toxic substances, the Sentencing Guidelines at §2Q1.2 apply.

    1.    USSG §2Q1.2(a)

Under §2Q1.2 the base offense level is eight points. See USSG §2Q1.2(a). Depending upon the specific characteristics of the offense there are increases and decreases to the adjusted offense level. See USSG §2Q1.2(b).

    2.    USSG §2Q1.2(b)(1)(A)

The Sentencing Guidelines at §2Q1.2(b)(1)(A) state that "[i]f the offense resulted in an ongoing, continuous, or repetitive discharge, release, or emission of a hazardous or toxic substance or pesticide into the environment," the offense level should be increased by six levels. For the six-level enhancement under §2Q1.2(b)(1)(A) to apply two conditions must be met. First, the offense must have involved "an ongoing, continuous, or repetitive discharge, release, or emission . . . ." See USSG §2Q1.2(b)(1)(A). Second, the repetitive discharge must go into the environment. Id. In this matter, both conditions have been met.

In this case, the discharges occurred numerous times between March 2007 and Aug 2007. In fact, based on the logs maintained at the Stricker Refinishing facility, the discharges occurred at least once times a week, on average. Because the discharge was repetitive, the first condition of §2Q1.2(b)(1)(A), is satisfied.

Concerning the second condition, several Courts have held that discharges to the sewer system are discharges to the environment. See United States v. Wells Metal Finishing, Inc., 922 F.2d 54, 59 (1st Cir. 1991), United States v. Hoffman, 210 F.3d 363, 363 (4th Cir. 2000), United States v. Van Loben Sels, 198 F.3d 1161, 1166 (9th Cir. 1999).

Alternatively, if this Court does not find that the discharges to the sewer system are discharges to the environment, the Court may still find that the discharges from the Stricker Refinishing facility still entered the environment. The wastewater discharges from the Stricker Refinishing facility included copper, nickel, silver, and zinc, which are metals. Because sewer treatment plants do not treat for metals, including NEORSD's plant, they pass through the plant and enter the environment.

There is no definition in the Sentencing Guidelines for the term environment. Additionally, the term environment is not defined under the Clean Water Act, the statute the defendants are charged with violating. See 33 U.S.C. § 1251, et seq. However, under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42, U.S.C. § 9601 et seq., an environmental statute administered by U.S. EPA, the term environment is defined. Under CERCLA, environment is defined to include "navigable waters . . . surface water . . . land surface or subsurface strata . . . ." 42 U.S.C. § 9601(8).

Under either interpretation, the discharges were into the environment, and therefore, the second criteria is met.

### 3. Application Note 5

Application Note 5 of USSG §2Q1.2 provides that "a departure of up to two levels in either direction . . . may be appropriate." This departure depends "upon the harm resulting from the emission, release or discharge, the quantity and nature of the substance or pollutant, the duration of the offense and the risk associated with the violation . . . ." See USSG §2Q1.2 Application Note 5.

The United States believes that the maximum departure allowable under Application Note 5 is appropriate. Therefore, the six-level increase under §2Q1.2(b)(1)(A) should be reduced by two-levels, to a four-level increase.

4. USSG §2Q1.2(b)(4)

The Sentencing Guidelines at §2Q1.2(b)(4) state that "[i]f the offense involved transportation, storage, or disposal without a permit," increase the offense level by four levels. In other words, if the offense was in violation of a permit, then the four-level enhancement applies.

In this case, the discharges from the Stricker Refinishing facility were subject to a NEORSD issued permit. The permit provides that "Stricker Refinishing must report any shutdown or bypass of the pretreatment system immediately to [NEORSD]."

The four-level enhancement applies in this case because the discharge was in violation of the NEORSD permit

5. Application Note 8

Application Note 8 of USSG §2Q1.2 provides that "a departure of up to two levels in either upward or downward" from the four-level increase under §2Q1.2(b)(4) "may be warranted." This departure depends "upon the nature and quantity of the substance involved and the risk associated with the offense . . . ." See USSG §2Q1.2 Application Note 8.

The United States believes that the maximum departure allowable under Application Note 8 is appropriate. Therefore, the four-level increase under §2Q1.2(b)(4) should be reduced by two-levels, to a two-level increase.

6. USSG §3B1.1

The aggravating role adjustment is covered in §3B1.1 of the Sentencing Guidelines. It provides for a two- three- or four-level enhancement depending on the number of persons involved in the criminal activity and the defendant's role as either organizer, leader, manager or supervisor.

For an aggravating role enhancement to apply, there must have been at least one other participant (besides defendant) in the criminal activity. The other participant must be someone who is criminally responsible for commission of the offense (even if not convicted). United States v. Haun, 90 F.3d 1096 (6th Cir. 1996), cert. denied, 519 U.S. 1059 (1997), United States v. Lewis, 68 F.3d 987 (6th Cir. 1995), United States v. Cohen, 946 F.2d 430 (6th Cir. 1991).

In this case, the defendants directed at least three employees to bypass the pretreatment system at the Stricker Refinishing facility. Therefore, the two level enhancement applies.

IV. APPLICATION OF § 3553(a) FACTORS

    A. Nature and Circumstances of the Offense and History and Characteristics of the Defendant

While the defendants are charged with an environmental crime, the defendants were motivated by financial considers to commit the crime. The defendants bypassed and directed the bypassing of the pretreatment system to prevent slow downs in the production process at the Stricker Refinishing facility.

In addition, the defendants likely saved money by bypassing the pretreatment system. This is because less wastewater is processed if a pretreatment system is bypassed. The less wastewater to process, the less chemicals that are needed to operate a

pretreatment system. So there would be a costs savings if less chemicals were to be purchased. In addition, less sludge would be generated if a pretreatment system was bypassed. This is significant, because all sludge generated must be stored and disposed of properly. By producing less sludge, less costs are incurred in the storage and disposal of the sludge.

  B. Need for the Sentence Imposed to Reflect Seriousness of Offense, to Promote Respect for the Law and to Provide Just Punishment for the Offense

The defendants disregarded the terms of the NEORSD rules and the permit for the Stricker Refinishing facility. Specifically, the NEORSD rules prohibit the bypassing of any pretreatment system. In addition, the NEORSD rules and the Stricker Refinishing permit provide for the notification of NEROSD after a bypass has occurred. None of these rules were complied with.

The defendants bypassed or directed the bypass of the pretreatment system, and did not notify NEORSD of these bypasses. This prevented NEORSD from knowing that improperly treated wastewater was being discharged into the sewer system. NEORSD must know what is being discharged into the sewer, not only for the safety of its employees, but to ensure the effective operation of its sewage treatment facility.

  C. The Need to Afford Adequate Deterrence and to Protect the Public from Further Crimes of the Defendant

A sentence that serves as a deterrent for these individuals and the regulated community is warranted. The U.S. EPA and NEORSD rely upon members of the regulated community to follow the rules. It is imperative that these agencies be able to rely upon those using the sewer system to follow the rules. The defendants' sentence, thereby, can serve as a strong deterrent. Members of the regulated community must

understand that bypassing a pretreatment system is unacceptable, and will not be tolerated.

The United States does not believe that these defendants are likely to engage in additional criminal conduct in the future.

D.   Educational or Vocational Training, Medical Care, or Other Correctional Treatment

The United States is unaware of any evidence to support adjusting the sentence "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the this matter." See 18 U.S.C. § 3553(a)(2)(D).

E.   Guidelines and Policy Statements Issued by the Sentencing Commission

The United States is unaware of any special guideline or policy statements issued by the U.S. Sentencing Commission that this Court should take into consideration in sentencing these defendants.

F.   Need to Avoid Unwarranted Sentence Disparities

The case at bar does not present any issue of sentencing disparity.

G.   Need to Provide Restitution to Any Victims of the Offense

As part of the company's guilty plea agreement, Stricker Refinishing has agreed to make a community service payment in the amount of $10,000. The payment will be made to Ducks Unlimited. The payment will be used by Ducks Unlimited to fund wetland conservation and restoration projects done by Ducks Unlimited in the Lake Erie watershed.

V.  CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court impose a sentence within the advisory Sentencing Guidelines range of 12 to 18 months.

        Respectfully submitted,

        STEVEN M. DETTELBACH
        United States Attorney

By:   s/Brad J. Beeson
      Brad J. Beeson
      Special Assistant U.S. Attorney
      Reg. No. 6236690 (IL)
      801 West Superior Avenue
      Suite 400
      Cleveland, Ohio  44113-1852
      Tel. No.:  (216) 622-3850
      Fax No.:  (216) 522-8354
      E-Mail:  beeson.brad@epa.gov

# CERTIFICATE OF SERVICE

       I certify that on March 17, 2011, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

                          By:    s/Brad J. Beeson
                                     Brad J. Beeson
                                     Special Assistant U.S. Attorney
                                     Reg. No. 6236690 (IL)
                                     801 West Superior Avenue
                                     Suite 400
                                     Cleveland, Ohio 44113-1852
                                     Tel. No.: (216) 622-3850
                                     Fax No.: (216) 522-8354
                                     E-Mail: beeson.brad@epa.gov